No. 25-3826

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CITY OF HUNTINGTON BEACH, a California Charter City, and Municipal Corporation; PARENT, 1A, 2A, 3A, 4A, 5A, 6A, 7A, 8A, 9A, 10A,

*Plaintiffs-Appellants,*

v.

GAVIN NEWSOM, in his official capacity as Governor of the State of California; ROB BONTA, in his official capacity as Attorney General of the State of California; TONY THURMOND, in his official capacity as California State Superintendent of Public Instruction,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
No. 8:24-cv-02017-CBM-JDE (Hon. Consuelo B. Marshall)

## REPLY BRIEF FOR THE APPELLANTS

Michael J. Vigliotta
  City Attorney
OFFICE OF THE CITY ATTORNEY
2000 Main Street, P.O. Box 190
Huntington Beach, CA 92648
Telephone: (714) 536-5555
mvigliotta@surfcity-hb.org

*Counsel for Plaintiff-Appellant*
*City of Huntington Beach,*
*a California Charter City, and*
*Municipal Corporation*

***Additional counsel on next page*

Gene C. Schaerr
Stephanie L. Freudenberg
Justin A. Miller
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

Donald M. Falk
SCHAERR | JAFFE LLP
One Embarcadero Ctr., Ste. 1200
San Francisco, CA 94111
Telephone: (415) 562-4942

*Counsel for Plaintiffs-Appellants*

Nicholas Barry
Ian Prior
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. S.E., #231
Washington, DC 20003
Telephone: (202) 964-3721

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................ii

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................2

I.    Plaintiffs Have Standing to Challenge AB 1955.........................2

    A.    Parent Plaintiffs Have Standing.......................................2

        1.    Parent Plaintiffs Have Multiple Injuries-in-Fact. .................................................................3

        2.    Parent Plaintiffs Have Alleged and Shown Causation and Redressability. ...............................13

    B.    The City Has Standing. ...................................................19

II.    Parent Plaintiffs Have Alleged and Shown that the Challenged Provisions Violate Their Fundamental Rights......19

    A.    Parents Have Far More Rights in the School Setting Than the State Contends...................................................20

    B.    Parent Plaintiffs Have a Fundamental Right to Direct Their Children's Medical Care. ............................23

    C.    Parent Plaintiffs Have a Fundamental Right to Receive Information From School Officials About Their Children's Symptoms of Distress or Mental Illness in School. ................................................................29

    D.    The Challenged Provisions Infringe Parent Plaintiffs' Fundamental Rights. ......................................32

III.    Plaintiff Parents are Entitled to a Preliminary Injunction......35

CONCLUSION ..............................................................................36

CERTIFICATE OF COMPLIANCE ......................................................38

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*1000 Feet DC, Inc. v. D.C. Alcoholic Beverage & Cannabis Bd.*,
 __A.3d__, 2025 WL 2348557 (D.C. Aug. 14, 2025) ..............................22

*Bates v. Pakseresht*,
 146 F.4th 772 (9th Cir. 2025)................................................................22

*Butt v. State of California*,
 4 Cal.4th 668 (1992) ............................................................................17

*Cent. Delta Water Agency v. United States*,
 306 F.3d 938 (9th Cir. 2002) ...............................................................19

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ...............................................................................6

*Colo. River Water Conservation Dist. v. United States*,
 424 U.S. 800 (1976) ...............................................................................7

*Deanda v. Becerra*,
 96 F.4th 750 (5th Cir. 2024).................................................................4

*Diamond Alternative Energy, LLC v. EPA*,
 145 S.Ct. 2121 (2025) ......................................... 13, 14, 15, 18

*Doe v. Franklin Square Union Free Sch. Dist.*,
 100 F.4th 86 (2d Cir. 2024) .................................................................28

*Doe v. Horne*,
 115 F.4th 1083 (9th Cir. 2024)......................................................27, 36

*Fields v. Palmdale Sch. Dist.*,
 427 F.3d 1197 (9th Cir. 2005) .......................................................20, 21

*Flaxman v. Ferguson*,
 __F.4th__, 2025 WL 2424420 (9th Cir. Aug. 22, 2025)..........................9

*Foote v. Ludlow Sch. Comm.*,
 128 F.4th 336 (1st Cir. 2025) ........................................................24, 25

*Foote v. Town of Ludlow*,
  No. 22-30041-MGM, 2022 WL 18356421
  (D. Mass. Dec. 14, 2022) ............................................................ 25

*Harrahill v. City of Monrovia*,
  104 Cal.App.4th 761 (2002) ...................................................... 16

*Inland Empire Waterkeeper v. Corona Clay Co.*,
  17 F.4th 825 (9th Cir. 2021) ....................................................... 6

*Int'l Partners for Ethical Care Inc. v. Ferguson*,
  146 F.4th 841 (9th Cir. 2025) ..................................................... 4

*Isaacson v. Mayes*,
  84 F.4th 1089 (9th Cir. 2023) ................................... 11, 17, 35

*Iten v. Los Angeles*,
  81 F.4th 979 (9th Cir. 2023) .......................................... 2, 11

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
  78 F.4th 622 (4th Cir. 2023) ....................................................... 9

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) ................................................. 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................... 13

*Mahmoud v. Taylor*,
  606 U.S. __, 145 S.Ct. 2332 (2025) ........................... 8, 9, 21, 22, 23, 32

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ............................................................... 7, 8

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .......................................... 11, 35

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ................................................... 36

*Mirabelli v. Olson*,
  761 F.Supp.3d 1317 (S.D. Cal. 2025) ................................ 21, 29

*Murthy v. Missouri,*
603 U.S. 43 (2024) ............................................................... 2, 4

*Nguon v. Wolf,*
517 F.Supp.2d 1177 (C.D. Cal. 2007) ............................... 33, 34

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,*
551 U.S. 701 (2007) ................................................................. 8

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.,*
145 S.Ct. 14 (2024) ............................................................. 6, 7

*Parents Protecting Our Children, UA v. Eau Claire Area*
*Sch. Dist.,* 95 F.4th 501 (7th Cir.) .......................................... 3

*Parham v. J.R.,*
442 U.S. 584 (1979) ........................................................ 34, 35

*Pierce v. Society of the Sisters,*
268 U.S. 510 (1925) ................................................. 14, 21, 23

*Regino v. Staley,*
133 F.4th 951 (9th Cir. 2025) ................................... 20, 21, 23

*Robins v. Spokeo, Inc.,*
867 F.3d 1108 (9th Cir. 2017) ............................................ 3, 4

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ................................................................. 6

*Troxel v. Granville,*
530 U.S. 57 (2000 ................................................... 21, 34, 35

*United States v. Skrmetti,*
145 S.Ct. 1816 (2025) ........................................................... 30

**Statutes**

Cal. Educ. Code §220.3.................................................. 1, 15, 32

Cal. Educ. Code §220.5.................................................. 1, 15, 33

Cal. Educ. Code §35160................................................. 16

Cal. Educ. Code §35160.1.............................................. 16

**Other Authorities**

Am. Compl.,
   *Foote v. Town of Ludlow*, No. 22-30041-MGM,
   2022 WL 18356421 (D. Mass. Dec. 14, 2022)*,* ECF No. 22 ................25

Matthew Cunningham,
   *Democrats Wiped Out in Huntington Beach City
   Council Election,* OC Indep. (Nov. 6, 2024) ........................ 19

## INTRODUCTION

The State tries to minimize the harms from AB 1955 by misrepresenting the statute as "prohibit[ing] only those school policies that require school officials to out LGBTQ students without the student's consent." State Br.1. To be sure, the Challenged Provisions do not "mandate that schools adopt non-disclosure policies." Br.5. But the blanket bans in those Provisions leave no room for "nuanced disclosure policies that account for considerations like a student's safety and well-being." Br.53-54.

On the contrary, the Challenged Provisions prohibit *any* means of requiring school staff to share with anyone any information relating to a child's gender identity, unless that child consents or some other law requires disclosure. *See* Cal. Educ. Code §§220.3, 220.5. That places the decision-making power with school staff and the children themselves, preventing schools from adopting nuanced policies or agreeing to individualized disclosure based on particular children's or parents' circumstances. Those broad prohibitions are designed to keep parents in the dark and to replace parents' rights to direct their children's upbringing with expanded prerogatives for state actors. And that

evident, present harm to parental rights amply warrants a preliminary injunction.

## ARGUMENT

The State has offered no sound basis to sustain the district court's orders dismissing the complaint and denying as moot Plaintiffs' motion for preliminary injunction. While the State suggests the Court should ignore the overwhelming evidence supporting the injunction, Br.15, that evidence reflects "reasonable inferences" from the pleadings to which Plaintiffs are entitled, *e.g.*, *Iten v. Los Angeles*, 81 F.4th 979, 983 (9th Cir. 2023), and at minimum indicates Plaintiffs should have been allowed to amend their complaint.

## I.   Plaintiffs Have Standing to Challenge AB 1955.

### A.   Parent Plaintiffs Have Standing.

As a threshold matter, the State focuses entirely on one "future injury" alleged by Parent Plaintiffs. *See* Br.19-20. But the State does not contest Parent Plaintiffs' allegations of *present* injuries—each of which independently suffices as a "clear showing" of injury-in-fact. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (cleaned up). And Parent Plaintiffs' future injuries also meet this Court's standards.

1. **Parent Plaintiffs Have Multiple Injuries-in-Fact.**

   a. **Parent Plaintiffs' present injuries satisfy Article III.**

The State simply ignores Parent Plaintiffs' allegations that the Challenged Provisions currently harm both their parental rights and relationships with their children. *See* 4-ER-643 ¶¶48-50; 4-ER-645 ¶¶62-64; 4-ER-647 ¶¶80, 86; 4-ER-648-49 ¶¶103-10; 4-ER-650-51 ¶¶122-25; 4-ER-653 ¶146; 4-ER-656 ¶¶168-73; 4-ER-659 ¶198. Likewise, the State brushes aside (Br.22) Parent Plaintiffs' ample allegations of fear and emotional distress. *See* 4-ER-644 ¶57; 4-ER-645 ¶¶62-64; 4-ER-646 ¶¶78-79; 4-ER-653 ¶¶144-46; 4-ER-657 ¶172; 4-ER-659 ¶¶192, 197. Yet in the trial court the State conceded that Parent Plaintiffs "certainly allege fear and emotional distress." 2-ER-293. And under this Court's precedent, "anxiety, stress, concern, and/or worry" establish "concrete injury." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1117 (9th Cir. 2017).

Rather than acknowledge *Robins*, the State points to a Seventh Circuit holding that not all "expressions of worry and concern" qualify as injury-in-fact. Br.22 (quoting *Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.,* 95 F.4th 501, 504-06 (7th Cir.), *cert. denied*, 145 S.Ct. 14 (2024)). *Robins* governs the issue here, and under its standard

Parent Plaintiffs' detailed allegations of fear and emotional distress are sufficient. *See* 867 F.3d at 1117.

Moreover, the State does not dispute that the Challenged Provisions' "attempted erasure" of Parent 10A's procedural rights under the ordinance is a cognizable injury-in-fact. *Deanda v. Becerra*, 96 F.4th 750, 759 (5th Cir. 2024). Instead, the State contends only that the alleged injury fails on causation grounds. *See* Br.31-32. This current injury therefore provides a sufficient injury-in-fact for Parent 10A. And the State is wrong about causation. *See* pp.15-17, *infra*.

Likewise, this Court implicitly recognized in *International Partners for Ethical Care Inc. v. Ferguson* that "restrictions on [parents'] access to information about their children" constitute a "current" injury-in-fact. *See* 146 F.4th 841, 848, 850 (9th Cir. 2025) ("*IPEC*"). In holding that the *IPEC* plaintiffs lacked standing, this Court tacitly accepted plaintiffs' allegations there that "schools' refusal to seek consent [for social transition] or provide up-to-date information relating to their children's gender … impos[ed] injury." *Id.* at 850. Yet the Court concluded that causation and redressability were absent because the challenged statutes "do not regulate the conduct of public schools." *Id.* Here, the Challenged

4

Provisions unquestionably regulate the conduct of public schools and burden Parent Plaintiffs' access to critical information about their children, causing a cognizable, current injury-in-fact. In short, Parent Plaintiffs' allegations of current injuries are independently sufficient to show injury-in-fact.

### b. Parent Plaintiffs' future injuries satisfy Article III.

Even with respect to Parent Plaintiffs' future injuries, the State does not dispute Parent Plaintiffs' ample allegations that their children will be harmed if they are socially transitioned at school without their Parents' knowledge. *See* 4-ER-673-80 ¶¶267-98. Instead, the State limits its arguments to *how much* risk there is that Parent Plaintiffs' children will be socially transitioned at school, Br.19-21 (Parents 3A, 4A (younger sibling), 5A (same), 6A, 8A (same), 9A, 10A), and to whether Parent Plaintiffs can ever be injured by secrecy once they know their children have previously expressed symptoms of gender incongruence or dysphoria, Br.27-28 (Parents 1A, 2A, 4A, 5A, 7A, 8A). Both groups have adequately alleged cognizable future injuries caused by the Challenged Provisions.

5

To be sure, future injuries must be either "certainly impending" or at a "substantial risk" of occurring. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). But this Court has made clear that an "increased risk of harm" or "credible threat" can "be injur[ies] in fact sufficient for standing." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 832 (9th Cir. 2021) (citations omitted). And here, Parent Plaintiffs allege that the Challenged Provisions increase the substantial and impending risk that they will be denied critical information about their children—whether social transition or just symptoms of mental distress—and the opportunity to direct their treatment. *See* 4-ER-643 ¶50; 4-ER-647 ¶¶80, 86; 4-ER-700-01 ¶¶427-32. That is so whether the school keeps a child's social transition secret or keeps secret other signs of distress because they reflect discomfort with the child's biological sex.

On that topic, the State mistakenly relies on decisions by other courts determining that parents lacked standing to challenge individual school nondisclosure policies. Br.22. That reliance rests on a "questionable understanding of *Clapper* [*v. Amnesty Int'l USA,* 568 U.S. 398 (2013)] and related standing decisions." *Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.,* 145 S.Ct. 14, 14 (2024) (Alito,

6

J., joined by Thomas, J., dissenting from denial of certiorari).[1] Two Justices have expressed concern "that some federal courts are succumbing to the temptation to use the doctrine of Article III standing as a way of avoiding some particularly contentious constitutional questions." *Id*. at 14-15. As important as it is to "heed the limits of [courts'] constitutional authority," it is "equally important" that courts "carry out their 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Id*. at 15. (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

The State also ignores (Br.22-26) the Supreme Court's instruction that the level of required risk is not static: "[t]he more drastic the injury that government action makes more likely, the lesser the increment in probability to establish standing." *Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) (cleaned up). So, "[e]ven a small probability of injury is sufficient … provided of course that the relief sought would … reduce the probability." *Id*. (cleaned up). The alleged injury in *Massachusetts* was "significant" enough that the imminence only had to "increase over the

---

[1] Justice Kavanaugh also would have granted the petition.

course of the next century." *Id.* at 521-23. Here, the injury to the Parent Plaintiffs and their children is much more imminent than that.[2]

Moreover, the Supreme Court in *Mahmoud v. Taylor* recently rejected a similar "wait and see" approach that "expect[s] parents to rely on after-the-fact reports by their young children to determine whether the parents' [constitutional] rights have been burdened." 606 U.S. __, 145 S.Ct. 2332, 2358 (2025). The Court rejected the very argument the State advances to distinguish *Mahmoud* here, emphasizing that "it is not clear how the [court below] expects the parents to obtain specific information about" the future injury when the relevant officials have "stated [they] will not notify parents" beforehand. *Id.*

The State nonetheless insists (Br.26 & n.13) that the Supreme Court's decisions about injurious risks in *Mahmoud* and *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007), are limited to merits analysis of free exercise claims and race-based claims, respectively. But the Supreme Court has never "so limit[ed] its holding" in *Parents Involved*. *John & Jane Parents 1 v. Montgomery*

---

[2] The Supreme Court's analysis on this point applies equally to injury-in-fact. *See Massachusetts*, 549 U.S. at 522-23 (discussing "the severity" of a potential future injury).

8

*Cnty. Bd. of Educ.*, 78 F.4th 622, 643 (4th Cir. 2023) (Niemeyer, J., dissenting), *cert. denied*, 144 S.Ct. 2560 (2024). And the notion "that injury under the Due Process Clause yields to asserted injury under the Equal Protection Clause … makes no sense and has no basis in constitutional law." *Id.*

Underscoring the point, this Court has cited *Mahmoud* for standing principles in other First Amendment contexts. *Flaxman v. Ferguson*, __F.4th__, 2025 WL 2424420, at *3, *5 (9th Cir. Aug. 22, 2025). And it would make no sense to limit *Mahmoud* to the merits because the Court recognized and redressed the parents' injury in *Mahmoud*. *See* 145 S.Ct. at 2363-64 (requiring preliminary injunction on remand). An injury sufficient to prompt relief is surely enough to satisfy Article III. Nor does the State dispute that depriving Parents of the ability to consent to the social transition of their children in school is at least as significant as the deprivation of consent to the curriculum in *Mahmoud*.

c. **The threatened harms to Parent Plaintiffs and their children are not speculative.**

Equally strained are the State's attempts to cast as speculative the harms threatening Parent Plaintiffs and their children. Br.19-20. The relevant question is whether the Challenged Provisions increase the

risks that children will be socially transitioned in secret in public school or that school staff will conceal symptoms of children's distress. And Parents amply allege that they do. *See* 4-ER-643 ¶¶48-50; 4-ER-645 ¶¶61-64; 4-ER-650-51 ¶¶122-25; 4-ER-659 ¶¶196-98. The articulated threats to Parents' rights and their children's mental and physical health are clearly "credible." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010). This "real and immediate" risk of harm, not the near-certainty the State demands, is sufficient to show injury-in-fact. *Id.*

No less flawed are the State's attempts to discount the risk factors for gender dysphoria that Parent Plaintiffs have identified. Br.20-21. Plaintiffs pleaded specific scientific literature showing that children diagnosed with ADHD or autism, or subject to social pressure, or who have a transgender or gender-nonconforming sibling or a parent who cross-dresses the child, are more likely to be identified—or misidentified by untrained teachers—as gender incongruent or having gender dysphoria. *See* 4-ER-667 ¶¶240-45; 4-ER-668-69 ¶¶249-51; 4-ER-676 ¶¶278-79; 4-ER-678-79 ¶¶290-93; *see also* 4-ER-645 ¶66; 4-ER-647 ¶¶82, 91. And the State's disagreement with the inferences that should be drawn from two of the reports cited in the Amended Complaint, Br.20-

21, is immaterial: standing for purposes of a motion to dismiss or for a preliminary injunction rests "only on the allegations of the … plaintiffs," *Isaacson v. Mayes*, 84 F.4th 1089, 1095 n.3 (9th Cir. 2023), drawing all "reasonable inferences" in their favor. *Iten*, 81 F.4th at 984. The plausibility pleading standard does not apply to the standing inquiry here. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). At this stage, Parent Plaintiffs need only allege an injury, not demonstrate one.

Similarly, the State discounts specific risk factors identified for children who are "dress[ed] … in girl's clothing" or "very interested in colors, patterns, symbols, and rainbows." Br.21 (citing 1-ER-13, 4-ER-644). But Plaintiffs' point is not that these minor children will necessarily experience gender incongruence or dysphoria. Rather, the point is that those children are at higher risk of engaging in behavior that parents need to know about in order to direct their children's care—and the Challenged Provisions will make it less likely that Parents will be informed. And there is the additional risk that untrained teachers may secretly socially transition the minor children. The State inadvertently highlights the risk by pointing to the therapist who confirmed that the child whose mother sent him to school in dresses was not suffering from

gender dysphoria. Br.21-22. Under the Challenged Provisions, an untrained teacher—rather than a mental health professional—will make that judgment and may choose the therapy.

The State next argues (at 27-29) that Parent Plaintiffs who allege that their children previously manifested gender confusion (Parents 2A, 4A, 5A, 7A, and 8A) also lack an injury-in-fact.[3] But in challenging the district court's contrary holding, the State improperly asks this Court to reject Parent Plaintiffs' ample factual allegations that gender identity is fluid and the resulting inference that previous gender confusion increases the children's risk of suffering a recurrence of symptoms of gender incongruence or dysphoria. *See* 4-ER-643 ¶¶47-48; 4-ER-645 ¶¶62-64; 4-ER-647 ¶86; 4-ER-650-51 ¶¶122-25; 4-ER-653 ¶¶145-46; 4-ER-656 ¶¶165-73; 4-ER-690 ¶358. And by asking this Court to reverse the district court's decision "crediting" allegations that identifying as transgender is not "an immutable characteristic," Br.28 (citing 1-ER-15), the State raises a factual dispute not appropriate for resolution at the

---

[3] The children of Parents 5A and 8A who previously expressed gender confusion in school—children 5C and 8C—have graduated from high school. Parents 5A and 8A continue to assert standing with respect to their younger children, 5D and 8D.

motion to dismiss stage. In any event, it is a reasonable inference that a child who has already secretly transitioned at school is more likely to do so again. But Parent Plaintiffs' knowledge that their children are at risk for secret social transition in school is no antidote to the threatened injury—because the Challenged Provisions are designed to keep parents in the dark about any facts bearing on their children's gender identity.

In short, the enhanced risks faced by Parent Plaintiffs make clear that they have "a personal stake in the dispute and are not mere bystanders." *Diamond Alternative Energy, LLC v. EPA*, 145 S.Ct. 2121, 2133 (2025) (cleaned up). All Parent Plaintiffs have alleged and shown cognizable injury-in-fact.

> ### 2. Parent Plaintiffs Have Alleged and Shown Causation and Redressability.

The State's causation and redressability arguments fare no better.

a. The State first argues that Parent Plaintiffs are not "the object of the government action" being challenged. Br.30 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)). But the Supreme Court's recent decision in *Diamond Alternative Energy* shows why the State's argument fails.

In finding standing in *Diamond*, 145 S.Ct. at 2135-36, the Supreme Court relied in part on *Pierce v. Society of the Sisters*, 268 U.S. 510, 535-36 (1925), an example of standing directly relevant here. In *Pierce*, although it was *parents* who "were the directly regulated parties" prohibited from sending their children to certain schools, and the schools were *not* directly regulated, those "affected schools had standing to sue" as they "might be considered an object of the … regulations." *Diamond*, 145 S.Ct. at 2135-36 (noting that regulations may be "indirectly target[ed]"). And the parallels here are obvious: Although the Challenged Provisions directly regulate public schools and school boards, parents whose children attend the regulated schools are also objects of the Challenged Provisions—with standing to sue. Indeed, from the first sentence of its brief, the State makes clear that parents are the supposed problem the Challenged Provisions target.

Because the Challenged Provisions do not merely foreclose existing school policies, the State is equally wrong to contend (Br.30-31) that Parents have no redressable injury unless their school has a mandatory disclosure policy. Instead, Section 6 prevents schools from adopting—and parents from seeking—nuanced policies that would require disclosure in

14

particular circumstances, unless the child consents or another law compels disclosure. *See* Cal. Educ. Code §220.5. And, with the same exceptions, Section 5 prevents schools from using—and parents from seeking—any other method (such as an agreement between the school and the parent) that would require disclosure. *Id.* §220.3.

Moreover, as the Supreme Court explained in *Diamond*, "[w]hen third party behavior is predictable, commonsense inferences may be drawn." 145 S.Ct. at 2136. And just as "[i]nvalidating the regulations" in *Diamond* "likely (not certainly, but likely) would make a difference for fuel producers because automakers would likely manufacture more vehicles that run on gasoline and other liquid fuels," *id.* at 2137, invalidating the Challenged Provisions here likely would make a difference for Parent Plaintiffs because schools and school boards would likely be more open to agreements, discussions, or other methods that would enable Parent Plaintiffs to obtain the information they seek from school staff. The Challenged Provisions foreclose those paths.

b. With respect to Parent 10A, the State tries but fails to excise schools from the scope of the City's Ordinance. *See* Br.31. That Ordinance undisputedly was a direct response to AB 1955, and by its plain text the

15

Ordinance applies to all "educators in the City of Huntington Beach." 4-ER-715. The State's attempts to exclude school staff from the covered educators ignores that the Ordinance's list of facilities is prefaced by "including but not limited to." 4-ER-715. Accordingly, the Ordinance is "not limited" as the State argues. *See* Br.31-32.

The State is also wrong to maintain that the City lacks authority under California law to require educators, including school staff, to disclose information to parents. Br.32. The State cites California Education Code §§35160 and 35160.1 in support. Br.32. But Section 35160 provides only that school districts may act "in any manner which is not in conflict with or inconsistent with … any law." Cal. Educ. Code §35160. And Section 35160.1 delegates to school districts the ability to spend funds. *See id.* §35160.1. Neither provision states that municipalities may not pass ordinances that impose requirements on school staff to disclose information to parents in the absence of contrary—and constitutional—state legislation. Nor do the two state court cases the State cites (at 31-32). *See Harrahill v. City of Monrovia*, 104 Cal.App.4th 761, 771 (2002) (city may prohibit children from being in public places other than school during school hours); *Butt v. State of California*, 4

16

Cal.4th 668, 674 (1992) (State has duty to prevent school district's budget problems from depriving students of educational equality).

As to the other Parent Plaintiffs, the State concedes that "certain school districts have in the past adopted the types of … policies now forbidden by AB 1955," but argues that no Parent Plaintiffs "specified that they reside in such a district" or would otherwise benefit from similar policies but for AB 1955. Br.32-33. Yet the State also concedes, *id.*, that the Parent Plaintiffs allege that "[s]ome of the parents lived in communities and school districts with family-friendly policies requiring schools to inform parents if the school had been asked to facilitate social transitioning," 4-ER-691 ¶367. And the State does not dispute that "AB 1955 ends these policies." *Id.* The State nonetheless tries to contest the facts regarding these allegations and whether "the relevant school districts" would actually have any "interest in adopting" a policy prohibited by AB 1955. Br.33. But the pleading controls at this stage, *see Isaacson*, 84 F.4th at 1095 n.3, and the district court correctly concluded that Parent Plaintiffs' allegations were sufficient for standing. 1-ER-17.

c. The State next contends the district court misunderstood the Challenged Provisions to prohibit schools and employees from disclosing

17

gender identity information, pointing to various loopholes. Br.34-35 (citing 1-ER-22). But pointing to ways that information may come out does not change the Challenged Provisions' effect: No school or district can require disclosure unless school officials and children agree, which, as a matter of "predictable, commonsense inferences," unquestionably reduces information flow. *Diamond*, 145 S.Ct. at 2136. As a result, the Parents cannot know whether they are being kept in the dark about their children's symptoms or whether school-based social transitioning is occurring. *See* 4-ER-650 ¶124, 4-ER-653 ¶146, 4-ER-690 ¶361. That deprivation of parental rights is directly traceable to the Challenged Provisions.

As the Supreme Court explained in *Diamond*, "[t]he primary goals" of the Article III redressability "requirement are to ensure that plaintiffs do not sue the wrong parties and that courts do not issue advisory opinions." 145 S.Ct. at 2138. And, the Supreme Court cautioned, "[t]he redressability requirement should not be misused … to prevent the targets of government regulations from challenging [those] regulations." *Id.* Here, it is clear Parent Plaintiffs are among the "targets" of the Challenged Provisions, which were designed to enable teachers and

children to keep parents in the dark about their minor children's gender identity. Accordingly, Parent Plaintiffs have standing.

### B. The City Has Standing.

The State does not meaningfully dispute that the City satisfies the standards for associational standing in *Central Delta Water Agency v. United States*, 306 F.3d 938, 951 (9th Cir. 2002). The State principally objects that associational standing would make it "trivially easy" for political subdivisions to bring Due Process claims against state legislation. Br.17. Not so. Not every case so clearly involves individual citizens facing concrete injury to their constitutional rights; many involve simple struggles over regulatory power.[4]

## II. Parent Plaintiffs Have Alleged and Shown that the Challenged Provisions Violate Their Fundamental Rights.

The State's attempts to constrict substantive parental rights in the school setting should also be rejected. The claims at issue here are not

---

[4] AB 1955 forecloses political responsiveness to controversial policies affecting children. The State points to the 4-3 vote to enact the Ordinance, Br.17 n.9, but fails to note that the three dissenting councilmembers were ousted in the November election. *See* Matthew Cunningham, *Democrats Wiped Out in Huntington Beach City Council Election,* OC Indep. (Nov. 6, 2024), https://tinyurl.com/3v79tkhe.

19

about curriculum or administrative concerns, but rather about fundamental parental rights to direct their minor children's upbringing.

## A. Parents Have Far More Rights in the School Setting Than the State Contends.

The State takes this Court's language out of context in asserting that parental substantive due process rights are "especially 'cabined' in school settings," Br.37 (quoting *Regino v. Staley*, 133 F.4th 951, 966 (9th Cir. 2025), *reh'g and reh'g en banc denied* (9th Cir. May 14, 2025)), and that "'[s]chools cannot be expected to accommodate' the familial 'concerns of every parent,'" Br. 37-38 (quoting *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005), *amended,* 447 F.3d 1187 (9th Cir. 2006) (per curiam))—altering the latter quote by replacing "personal, moral, or religious" with "familial."

The "central holding" of *Fields* was merely that no parental right exists to "direct how a public school *teaches* [a] child." 447 F.3d at 1190 (emphases changed; citation omitted). Here, Parent Plaintiffs' allegations do not involve teaching or school administration, but rather parents' ability to direct medical treatment and the provision by school staff to parents of information about a child's symptoms of distress. Parent Plaintiffs invoke their substantial "constitutional right to be accurately

informed by public school teachers about their student's gender incongruity that could progress to gender dysphoria, depression, or suicidal ideation, because it is a matter of health." *Mirabelli v. Olson*, 761 F.Supp.3d 1317, 1332 (S.D. Cal. 2025).

Nor can the State's reading of *Regino* and *Fields* survive the Supreme Court's recent decision in *Mahmoud*. Although *Mahmoud* addressed parental free exercise rights under the First Amendment, the State offers no reason why fundamental parental due process rights under the Fourteenth Amendment should receive lesser protection. On the contrary, the Supreme Court has recognized that parents' general right to "make decisions concerning the care, custody, and control of their children," *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality op.) (collecting cases), and to "direct the[ir] upbringing and education," *Pierce*, 268 U.S. at 534, is "perhaps the oldest of the fundamental liberty interests." *Troxel*, 530 U.S. at 65 (plurality op.) (collecting cases).

The State thus cannot avoid the central holding of *Mahmoud* that parental rights to direct religious upbringing "are violated by government policies that substantially interfere with the religious development of children." 145 S.Ct. at 2350 (cleaned up). That

substantial-interference standard logically applies not just to the specific right to direct religious upbringing, but to the general fundamental parental right to make decisions for one's children and direct their upbringing. The latter right, like the First Amendment right at issue in *Mahmoud*, "is not merely a right to teach [one's children] in the confines of one's own home," but "extends to the choices that parents wish to make for their children outside the home." *Id.* at 2351. The State does not gain plenary power once the child steps away from the family doorstep.

That is why this Court has cited *Mahmoud* to show that "a state's general conception of the child's best interest does not create a force field against the valid operation of other constitutional rights." *Bates v. Pakseresht*, 146 F.4th 772, 783 (9th Cir. 2025) (denial of a parent's certification to be an adoptive parent violated the free speech and free exercise clauses). And the D.C. Court of Appeals has cited *Mahmoud* in articulating the scope of the general, "fundamental right to direct the upbringing and education of one's children." *1000 Feet DC, Inc. v. D.C. Alcoholic Beverage & Cannabis Bd.*, __A.3d__, 2025 WL 2348557, at *5 (D.C. Aug. 14, 2025) (right not violated by license issued to cannabis dispensary near school).

Accordingly, any limits "cabin[ing]" *Pierce* "in the education context," *Regino*, 133 F.4th at 966, must accord with *Mahmoud*'s balance between parental rights and school prerogatives. And *Mahmoud* held that the government cannot prohibit parents from opting children out of LGBTQ lessons, 145 S.Ct. at 2363-64, an educational process that interferes far less with parents' constitutional rights than the Challenged Provisions' prohibition on any policy or individualized requirement for school staff to disclose to parents their children's symptoms of distress or school-based social transition.

In short, the State cannot shield the Challenged Provisions by asserting that parents' fundamental rights end at the schoolhouse door.

## B. Parent Plaintiffs Have a Fundamental Right to Direct Their Children's Medical Care.

Unwilling to grapple with Parent Plaintiffs' asserted right "'to make decisions about [their] child's medical care,' including to consent—or deny consent," Pl.Br.40 (quoting 1-ER-26), the State reformulates Plaintiffs' claim as a right to prevent social transition in school. *See* State Br.39. That approach continues the State's—and the district court's—confusion of the deeply rooted right at issue with one form of its infringement.

23

Because Parent Plaintiffs assert a violation of their fundamental right to direct their children's medical treatment, the pertinent question is whether the district court erroneously rejected Plaintiffs' detailed allegations that social transition is medical treatment. *See* 1-ER-26-27 (holding that medical treatment must "involve … 'intrusions upon the bodily integrity of the child or other conduct with clinical significance'" (quoting *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336, 350 (1st Cir. 2025), *pet. for cert. docketed,* No. 25-77 (U.S. July 22, 2025)). On this point, the State attempts to limit medical treatment even further, reframing it as only "what licensed healthcare professionals provide their patients in the course of diagnosis and treatment, consistent with the regulated practice of medicine." Br.40. But under this logic, teachers could provide medication, injections, therapy, or even surgery to children without implicating the parental right to direct medical treatment, so long as no medical professionals were involved. That makes no sense.

On this point the district court relied on the First Circuit's decision in *Foote*, but that court recognized that whether social transition is medical treatment is a factual question. *See* 128 F.4th at 349. Undercutting the State's and district court's reliance here, the First

24

Circuit was careful to note that it was "not opin[ing] on whether, under certain circumstances, acceding to a student's use of a chosen name and pronouns could ever constitute medical treatment." *Id.* at 350 n.18. The court explained that it did not reach that question because the parents in *Foote* alleged only "conclusory statements describing the use of preferred names and pronouns as mental health treatment." *Id.* at 349. In fact, the *Foote* district court noted that the parents "were equivocal as to whether" social transitioning even "constituted actual mental health treatment." *Foote v. Town of Ludlow*, No. 22-30041-MGM, 2022 WL 18356421, at *4 (D. Mass. Dec. 14, 2022), *aff'd*, 128 F.4th 336 (1st Cir. 2024). Only two paragraphs in the *Foote* complaint asserted that social transition is medical treatment. *See* Am. Compl. ¶¶42-43, *id.,* ECF No. 22. In sharp contrast, the amended complaint here specifically alleges in 12 pages of detail that social transition is medical treatment that has clinical significance. 4-ER-669-80 ¶¶252-98. In short, the far more extensive and detailed pleading here adequately alleged that social transition is medical treatment.

Similarly, the State misrepresents social transition as limited to "honoring a student's request to use a [specific] name and pronouns."

Br.39-40. But Plaintiff Parents allege more than that, asserting that social transition includes "changing a person's pronouns, name, clothes, bathroom, or sports team, and, in some cases, breast-binding or genital-tucking." 4-ER-669 ¶252. And the Amended Complaint never suggests that secret social transition in school is limited to school staff merely "honoring a student's request." Br.39-40. On the contrary, Parent Plaintiffs allege that AB 1955 creates "an environment where government employees are encouraged to … actively facilitate social transitioning" of children in school. 4-ER-690 ¶360; *see also* 4-ER-691 ¶364 ("Parent Plaintiffs object to the State's decision to facilitate experimental gender dysphoria treatments"). From such allegations, it can be reasonably inferred that school staff not only "honor[] a student's request" themselves, Br.39-40, but also encourage other students to do so—engaging in a form of group therapy with long-lasting consequences for the minor children potentially suffering from gender dysphoria. *See, e.g.*, 4-ER-675 ¶277. And by doing so in secret, school staff prevent parents from seeking professional evaluation and alternative treatments for their minor children. *See* 4-ER-677 ¶286 (alleging that "AB 1955

favors a one-size-fits-all social transitioning approach that leads to bad health outcomes").

The State also tries to blunt the force of this Court's statement in *Doe v. Horne* that social transition is medical treatment. *See* 115 F.4th 1083, 1107 n.13 (9th Cir. 2024), *pet. for cert. docketed sub nom. Peterson v. Doe,* No. 24-449 (U.S. Oct. 22, 2024)). The State maintains that the statement in *Horne* merely reflects an affirmed factual finding from the district court. Br.42. But this argument only further highlights that whether social transition is medical treatment is a disputed factual issue—one that the district court below should not have resolved on a motion to dismiss.

In addition, the State misrepresents Plaintiff Parents' position in arguing that they have taken the "far-reaching position that conduct qualifies as medical treatment whenever it has some downstream impact on health-related outcomes." Br.42 (citing Pl.Br.50). That unfairly caricatures Plaintiffs' brief and its citations to the Amended Complaint. As the brief explained, Parent Plaintiffs "specifically pleaded … 'significant effects'" on their children's "'psychological functioning and longer-term outcomes,'" including "'lock[ing] … in' gender dysphoria"

which results in "'chemical and then surgical transitioning.'" Pl.Br.50 (quoting 4-ER-670-71 ¶¶255, 259; 4-ER-675 ¶277).

Finally, the State maintains that social transition is no different than sending children outside for physical activity during recess. *See* Br.42-43. But a closer hypothetical would be school staff secretly facilitating an asthmatic child's participation in running cross-country. Indeed, in common experience, children are required to obtain parental permission before even joining a sports team. And yet the State asserts that schools may facilitate social transition of a minor child without parents' knowledge or permission, even though such treatment has much more significant consequences to a child's health and wellbeing than joining a team.[5]

---

[5] Also inapposite is the Second Circuit's decision in *Doe v. Franklin Square Union Free School District*, 100 F.4th 86, 96-97 (2d Cir.), *cert. denied,* 145 S.Ct. 570 (2024), about wearing a mask, with hypotheticals about shoes or helmets. Br.43. Those situations involve providing equipment for injury prevention, not psychological treatment by school officials.

C.   **Parent Plaintiffs Have a Fundamental Right to Receive Information From School Officials About Their Children's Symptoms of Distress or Mental Illness in School.**

The State once again misrepresents Plaintiffs' second asserted fundamental right as the "right to receive information from school officials related to their child's gender identity or gender expression." Br.43. As Parent Plaintiffs previously explained, however, "the right [they] actually asserted [is] the more general fundamental right to information about their children's 'symptoms of distress or mental illness in school.'" Pl.Br.56-57 (quoting 2-ER-44, which cites *Mirabelli*, 761 F.Supp.3d at 1331, and citing 4-ER-699-701 ¶¶422, 425-33).[6]

The State's argument that "being transgender or gender nonconforming is not a mental health condition or disorder," Br.44, is also misguided. Parent Plaintiffs never said that it was, let alone relied on that status—though gender dysphoria and gender incongruence are recognized psychiatric conditions. 4-ER-664 ¶222. Instead, Parent

---

[6] Nor do Plaintiffs assert a right to mandatory uniform policies requiring disclosure of all conceivable cross-sex behavior to all parents all the time. They assert that the Challenged Provisions' blanket ban on requiring *any* disclosure related to gender identity or expression infringes their rights.

Plaintiffs allege that, when a child asks school staff to facilitate social transition, that child is inherently displaying discomfort with the child's birth sex. 4-ER-635-36; 4-ER-664 ¶222. Moreover, school staff—who are not mental health professionals—are not qualified to tell the difference between gender incongruence, gender dysphoria, or any number of other conditions that frequently accompany gender conditions, such as anxiety, depression, autism, or ADHD. 4-ER-677-80 ¶¶286-88, 290-93, 298; *see also* 4-ER-644-45 ¶¶55, 57, 62; 4-ER-649 ¶112.

Likewise, the State cites the Supreme Court's decision in *United States v. Skrmetti*, 145 S.Ct. 1816, 1833 (2025), as support for its assertion that "identifying as transgender or gender nonconforming" is not a symptom "of any other medical condition." Br.44. But the Court neither addressed nor resolved that question in *Skrmetti*, holding only that a Tennessee law prohibiting the prescription of puberty blockers for the treatment of gender dysphoria did not "classify on the basis of transgender status," but instead classified on the basis of "one set of diagnoses—gender dysphoria, gender identity disorder, and gender incongruence." *Skrmetti,* 145 S.Ct. at 1832-33. The Court also did not address, let alone decide, the relation between "transgender status" and

those diagnoses, other than to say it was not a one-to-one overlap. Certainly, the Court's holding does not foreclose the conclusion that a minor child seeking to adopt a new name and pronouns is expressing discomfort with his or her natal sex and may be subject to one or more of the many comorbidities associated with gender confusion or gender dysphoria. In any event, what matters here is that deciding which behavior may fit which diagnosis is a matter for professionals selected by informed parents, not for untrained school officials acting without parental knowledge or consent.

The State further tries to twist the Parent Plaintiffs' asserted fundamental right into "mere nondisclosure of information." *See* Br.45 (citation omitted). But Parent Plaintiffs have never alleged that they have a right to be informed in every instance of what a teacher might observe on the playground. Instead, Parent Plaintiffs are asserting their right not to be impeded by state law from learning about their children's symptoms of mental distress.

In arguing against parental rights to information, the State invokes cases finding no requirement to inform parents of certain health services provided to minors outside schools. Br.48-50. As *Mahmoud* made clear,

145 S.Ct. at 2357-58, however, the coercive context of compulsory schooling alters the calculus. *See* Pl.Br.43-45. And AB 1955 prohibits salutary full-disclosure requirements, casting parents as an enemy whom schools should join with students to deceive. By endorsing barriers to deprive parents of necessary information about their children's mental health, the Challenged Provisions harmfully entangle schools in the parent-child relationship and deprive parents of their fundamental rights.

### D. The Challenged Provisions Infringe Parent Plaintiffs' Fundamental Rights.

The State's argument that the Challenged Provisions do not infringe Parent Plaintiffs' fundamental rights again relies on a misrepresentation of the scope of those Provisions. *See* Br.46-48. Contrary to the State's depiction, AB 1955 is far more than a "limited restriction on blanket forced-outing policies." Br.47. Rather, the Challenged Provisions, read together, prohibit schools from requiring teachers, through any means, to disclose any information about a child's gender identity to anyone, including school administrators and that child's parents, unless the child consents or some other law requires disclosure. *See* Cal. Educ. Code. §§220.3, 220.5. This prohibition shifts

the decision-making power from parents to school staff and children themselves.

The State also contends, erroneously, that Parent Plaintiffs do not dispute that the State's interests are compelling. Br.53. But Plaintiffs' brief made that dispute crystal clear, stating that "AB 1955 does not serve a compelling interest," and explaining that "the State cannot inflate" a set of "recently created state privacy rights for *children* into a compelling interest." Br.64.

The State first claims (at 3, 52-54) that AB 1955 seeks to rectify discrimination against children with gender dysphoria or incongruence. But the law actually discriminates against the *parents* of such children: In fact, it permits schools to require parental notification of children with other medical conditions when those conditions manifest at school but prohibits requiring notification only of gender-related conditions. The State is asserting a child's right to privacy from her parents—a new state right created by AB 1955.[7] But that newly created state right cannot

---

[7] The State (at 53) cites a district court decision reaching the remarkable and unreasoned conclusion that a student had a reasonable expectation of privacy—from her parents alone—regarding her open and public conduct at school. *See Nguon v. Wolf*, 517 F.Supp.2d 1177, 1191, 1196 (C.D. Cal. 2007). The court's conclusion, however, was based on

overcome the federal constitutional presumption that parents have the best interests of their children at heart. *Parham v. J.R.*, 442 U.S. 584, 604 (1979); *Troxel*, 530 U.S. at 69 (plurality op.). That constitutional presumption precludes the State from usurping the parental role wholesale, encouraging children to keep secrets from their parents and instead place their trust in state actors.

Nor is the State correct that AB 1955 is narrowly tailored merely because it prohibits the policies that it declared to be harmful, or because the legislature "considered research" showing a "substantial connection" between AB 1955's ends and the prohibitions it imposes. *See* Br.54. Narrow tailoring requires achieving the State's interest while causing the least amount of harm to Parent Plaintiffs' fundamental rights. But the State has not shown that its interests justify reversing the presumption that parents act in the best interests of their children without the individualized evidentiary showing necessary to justify that

---

individualized facts specific to her immigrant parents, who "spoke a limited amount of English" and whose home was "an insular environment." *Id.* at 1191. One might as easily establish a reasonable expectation of privacy from one's spouse regarding an open workplace affair.

drastic course. *See Parham*, 442 U.S. at 604; *Troxel*, 530 U.S. at 69-70 (plurality op.).

The State's additional argument that children might be "chill[ed]" from "expressing their identities openly and honestly at school," Br.55, asserts a normative value in children expressing identities opposite from their sex. But whatever value may attend cross-sex expression is scarcely compelling compared to parents' well-recognized fundamental rights, nor does it follow that burdening the fundamental rights of all parents is a narrowly tailored means of promoting cross-sex behavior at the margins. On the contrary, as noted above, the Constitution requires the State to presume that parents are fit and restrict disclosure only if they have been shown not to be. Concerns with specific parents must be addressed case by case—not by the State displacing the parental role.

## III. Plaintiff Parents are Entitled to a Preliminary Injunction.

The State also asks this Court to remand the case if the dismissal is overturned—and thus delay relief for many more months. But there is no need to delay relief further. The standing analysis is the same for both motions. *See Isaacson*, 84 F.4th at 1095 n.3; *Maya*, 658 F.3d at 1068. The State does not meaningfully dispute that, so long as Plaintiffs are likely

to succeed on the merits, the other factors supporting a preliminary injunction are met. Thus, the State claims a "strong interest in preserving duly enacted laws," Br.57, but it has no legitimate interest in preserving unconstitutional laws. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). To the contrary, "it is always in the public interest to prevent the violation of a party's constitutional rights," *Horne*, 115 F.4th at 1098-99 (citation omitted). And any extant interest in preserving laws is further attenuated because Parent Plaintiffs seek preliminary relief only as to themselves, leaving AB 1955 otherwise intact.

## CONCLUSION

Plaintiffs have pleaded and proved—at this stage—that the Challenged Provisions unconstitutionally burden Parent Plaintiffs' fundamental rights to direct their children's medical treatment and to receive information about their children's distress expressed to state actors. The district court's orders should be reversed with instructions to enter a preliminary injunction enjoining Defendants' enforcement of the Challenged Provisions as to Plaintiffs.

September 3, 2025

Michael J. Vigliotta
  City Attorney
OFFICE OF THE CITY ATTORNEY
2000 Main Street, P.O. Box 190
Huntington Beach, CA 96248
Telephone: (714) 536-5555
mvigliotta@surfcity-hb.org

Nicholas Barry
Ian Prior
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave S.E., #231
Washington, DC 20003
Telephone: (202) 964-3721
nicholas.barry@aflegal.org
ian.prior@aflegal.org

Respectfully submitted,

*/s/ Gene C. Schaerr*
Gene C. Schaerr
Stephanie L. Freudenberg
Justin A. Miller
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

Donald M. Falk
SCHAERR | JAFFE LLP
One Embarcadero Center
Suite 1200
San Francisco, CA 94111
Telephone: (415) 562-4942
dfalk@schaerr-jaffe.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume limitation of Circuit Rule 32-1(b) because it contains 6,917 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

*/s/ Gene C. Schaerr*
Gene C. Schaerr
*Counsel for Plaintiffs-Appellants*