UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 18 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CITY OF HUNTINGTON BEACH, ET AL., | No. 25-3826 |
| Plaintiffs-Appellants, | |
| v. | D.C. No. 8:24-cv-02017-CBM-JDE Central District of California, Santa Ana |
| GAVIN NEWSOM, ET AL., | |
| Defendants-Appellees. | ORDER |

Before: COLLINS, LEE, and KOH, Circuit Judges.

Before the court is "Motion for Reconsideration of Preliminary Injunction Pending Appeal" (Dkt. 58), filed on behalf of Plaintiffs-Appellants 2A, 3A, 4A, 5A, 6A, 7A, and 10A ("Movants").[1] We have twice denied motions for preliminary injunctions pending appeal, concluding that the relevant Plaintiffs-Appellants had failed to make a sufficient showing of Article III standing. Dkts. 42, 53. In the instant motion, Movants assert that, in light of *Mirabelli v. Bonta*, 607 U.S. 492 (2026), we should reconsider our denial of a preliminary injunction pending appeal. We agree, grant the motion, and grant a preliminary injunction as described below.[2]

---

[1] Only Plaintiff-Appellant 8A did not join the motion.

[2] Defendants-Appellees note that Circuit Rule 27-10(a)(2) ordinarily requires that a motion for reconsideration be filed "within 14 days after entry of the order." However, a later-filed motion may be allowed by leave of court, and it is appropriate to do so where, as here, the movants contend that "there is a change in

1.  "The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc).  That test requires us to consider the plaintiff's "likelihood of success on the merits," their showing of "irreparable injury," the "balance of hardships," and the "public interest." *Southeast Alaska Conservation Council v. United States Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) (simplified).  The balance of hardships and public interest factors merge when the government is the defendant.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

2.  Before turning to the application of these factors here, we first summarize the Supreme Court's recent ruling in *Mirabelli*.

In *Mirabelli*, various parents and teachers sought, *inter alia*, "classwide relief" against "certain California policies" that they alleged "violate their rights under the Free Exercise Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment."  607 U.S. at 492–94.  Specifically, the *Mirabelli* plaintiffs "alleged that California's policies," reflecting the State's construction of various California laws, "permitted disclosure of a student's gender

---

legal or factual circumstances after the order which would entitle the movant[s] to relief."  NINTH CIR. R. 27-10, advis. comm. note.  Moreover, our March 3, 2026 order expressly required the parties to address the impact of the *Mirabelli* order "on the issues presented in this case," which includes the issue of preliminary relief pending disposition of this appeal.  Dkt. 54.

2

transitioning at school only if the student consented." *Id*. at 493. As relevant here, the district court in *Mirabelli* certified a "subclass of parents [that] comprises all those who object to the challenged policies." *Id*. at 494–95. The district court subsequently "granted summary judgment for all plaintiffs and entered a permanent injunction in their favor." *Id*. at 495. Among other things, the injunction "prevents the schools from 'misleading' parents about their children's gender presentation at school and their social transitioning efforts" and "requires the schools to follow parents' directions regarding their children's names and pronouns." *Id*. A panel of this court stayed the injunction pending appeal, holding that "the injunction seemed to grant relief to uninjured class members who lacked Article III standing" and that there were substantial doubts as to the substantive merits of the plaintiffs' free exercise and substantive due process claims. *Id*.

The Supreme Court granted the *Mirabelli* plaintiffs' motion to vacate this court's stay of the injunction. As to standing, the Court held as follows:

> [T]he parents protected by the injunction very likely have standing because they are objects of the challenged exclusion policies. *See Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025). Contrary to the Ninth Circuit's suggestion, the injunction does not provide relief for all the parents of California public school students, but only for those parents who object to the challenged policies or seek religious exemptions.

607 U.S. at 498. The Court further held that "class certification was likely proper." *Id*.

3

With respect to the merits of the plaintiff parents' substantive due process claims, the Court stated:

> Under long-established precedent, parents—not the State— have primary authority with respect to "the upbringing and education of children." *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925); *accord*, *Meyer v. Nebraska*, 262 U.S. 390, 399–400 (1923). The right protected by these precedents includes the right not to be shut out of participation in decisions regarding their children's mental health. *Parham v. J.R.*, 442 U.S. 584, 602 (1979). Gender dysphoria is a condition that has an important bearing on a child's mental health, but when a child exhibits symptoms of gender dysphoria at school, California's policies conceal that information from parents and facilitate a degree of gender transitioning during school hours. These policies likely violate parents' rights to direct the upbringing and education of their children.

*Mirabelli*, 607 U.S. at 497.

3. In light of *Mirabelli*, the Movants are likely to succeed on the merits of their constitutional claim, including the required threshold showing of Article III standing.

a. Standing requires (1) an injury-in-fact (2) that is traceable to the challenged action of the defendant and (3) that would likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In our prior rulings, we assumed injury-in-fact *arguendo*, but we concluded that the relevant Plaintiffs-Appellants had "failed to adequately show that their asserted future injuries are fairly traceable to AB 1955 and would be redressed by a

decision invalidating AB 1955 in whole or in part." Dkt. 53 at 1 (simplified). Reconsidering the standing issue in light of *Mirabelli*, we conclude that Movants have sufficiently established standing to support preliminary injunctive relief. *Mirabelli* rejected, as likely to fail, the contention that the certified class of parents included "uninjured" persons "who lacked Article III standing," 607 U.S. at 495, and its reasons for finding sufficient standing are applicable here.

As the Court explained, the substantive due process right of parents "to direct the upbringing and education of their children" "includes the *right not to be shut out* of participation in decisions regarding their children's mental health," which includes the right to information known to the school about whether "a child exhibits symptoms of gender dysphoria at school." *Mirabelli*, 607 U.S. at 497 (emphasis added). As framed by the Court, the plaintiff parents thus have an affirmative constitutional right to be provided with any such information. *Id*. Without requiring any individualized showing as to whether a particular parent's child was likely to exhibit gender dysphoria, the Court held that "parents who *object* to the challenged policies" withholding such information "very likely have standing because they are objects of the challenged exclusion policies." *Id*. at 498 (emphasis added) (citing *Diamond Alternative*, 606 U.S. at 114).

In this case, the challenged provisions of AB 1955 regulate the policies and practices of school districts and their employees by generally prohibiting

mandatory reporting policies or directives that would require an employee "to disclose any information related to a pupil's sexual orientation, gender identity, or gender expression to any other person without the pupil's consent."  Dkt. 42 at 6 (quoting CAL. EDUC. CODE §§ 220.3(a), 220.5(a)).  "[I]nformation related to a pupil's . . . gender identity [] or gender expression," *id.*, includes information about "a child exhibit[ing] symptoms of gender dysphoria," *Mirabelli*, 607 U.S. at 497. As we have explained, *Mirabelli* held that the Constitution generally *requires* that "parents who object" to the withholding of any information about their child exhibiting symptoms of gender dysphoria be provided with that information rather than be "shut out of participation" in such important "decisions regarding their children's mental health."  *Id*. at 497–98.  In light of *Mirabelli*, AB 1955 thus forbids the mandatory policies that the Constitution requires with respect to information about a child exhibiting symptoms of gender dysphoria, and the objecting parents who affirmatively desire any such information from schools have sufficient Article III standing because they are the "objects" of AB 1955's provisions.  That is, even though the school districts and their employees are the "directly regulated parties," the ultimate "target[]" of AB 1955's provisions are the objecting *parents* who, under its terms, may not be granted the constitutionally required mandatory access to information about their children's exhibiting symptoms of gender dysphoria.  *Diamond Alternative*, 606 U.S. at 114–15.

In light of *Mirabelli*, Article III standing does not require Movants to present evidence that, in the absence of AB 1955, their particular school districts or administrators would *choose* to adopt the sort of mandatory reporting policies or directives that AB 1955 prohibits. *See* Dkt. 42 at 6–7. Movants expressly allege that substantive due process *requires* that Movants be provided by schools with information concerning any "[g]ender dysphoria or incongruence" expressed by their children. Given that, in light of *Mirabelli*, AB 1955 forbids mandatory policies that the Constitution requires with respect to information about a child exhibiting symptoms of gender dysphoria, it does not matter whether, in the absence of AB 1955, a school district or administrator would have independently chosen to follow such a mandatory policy. Under *Mirabelli*, an objecting parent who is the target of AB 1955's effort to prohibit constitutionally required mandatory policies has standing to seek injunctive relief to remove that unlawful impediment to compliance with the Constitution.

Although our prior orders assumed injury-in-fact *arguendo*, we conclude that *Mirabelli* confirms that Movants have made a sufficient showing on that score as well. *Mirabelli* found sufficient standing *without* requiring the objecting parents who constituted the relevant subclass to make any specific showing as to the likelihood that their particular child would actually experience gender dysphoria and have that information withheld. The omission is notable, because the core of

7

the State's standing objection in *Mirabelli* was that the "vast majority of public school parents" in the certified class "face no 'certainly impending' injury from the challenged policies, because they cannot show a 'substantial risk' that their children will identify as transgender—let alone express that identity at school, ask that their parents not be told, and have that request respected." Respondents' Opp. to Emergency Application to Vacate Interlocutory Stay Order, *Mirabelli v. Bonta*, No. 25A810, 2026 WL 174335, at \*24 (Jan. 21, 2026) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The Court conspicuously did not require any such individualized showing, but instead held that the class members "very likely" had standing simply because, under *Diamond Alternative*, they were the "objects" of the challenged California laws' regulation of information exchanges with parents on this subject. *Mirabelli*, 607 U.S. at 498 (citing *Diamond Alternative*, 606 U.S. at 114). Under *Mirabelli*, the objecting parents in this case also "very likely have standing" because, over their objection that they want from the school any pertinent information concerning their child's "gender identity[] or gender expression," AB 1955 targets those information exchanges with such parents by forbidding the mandatory disclosure policies that they contend the Constitution requires. *See* CAL. EDUC. CODE §§ 220.3(a), 220.5(a).

b. For the reasons that we have already discussed, Parents will likely succeed on the merits of their substantive due process challenge to AB 1955 to the

8

extent that AB 1955's regulation of "information related to a pupil's . . . gender identity[] or gender expression," CAL. EDUC. CODE §§ 220.3(a), 220.5(a), covers information about a child exhibiting symptoms of gender dysphoria. *See Mirabelli*, 607 U.S. at 497. Moreover, there is no contention that any of the Movants are "unfit parents" who present a risk of abuse if they are provided with information about their children exhibiting symptoms of gender dysphoria. *Id*. at 498.

4. Under *Mirabelli*, Movants have also made a sufficient showing of irreparable injury. The deprivation of constitutional rights "constitutes irreparable harm." *Mirabelli*, 607 U.S. at 497; *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." (simplified)). Because AB 1955 likely deprives Movants of their constitutional rights, they have shown irreparable harm.

5. The balance of equities and the public interest also favor an injunction. "Everyone agrees that children's safety is the overriding equity," and an injunction here "promotes child safety by guaranteeing fit parents a role in some of the most consequential decisions in their children's lives." *Mirabelli*, 607 U.S. at 497. And enjoining an unconstitutional law furthers the public interest.

9

Accordingly, we grant Movants' motion for reconsideration (Dkt. 58).[3] Pending the disposition of this appeal and the issuance of our mandate, we enjoin Defendants-Appellees from taking any action to enforce Sections 5 and 6 of AB 1955 (codified as California Education Code §§ 220.3(a), 220.5(a)) as to Parents 2A, 3A, 4A, 5A, 6A, 7A, and 10A with respect to information about their respective children exhibiting symptoms of gender dysphoria.

---

[3] We also grant the unopposed "Motion for Leave to File Amicus Brief" (Dkt. 29).